# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------- X

FORTRESS CREDIT ADVISORS LLC,

                Plaintiffs,

        -against-

TWG DEVELOPMENT, LLC, LOUIS KNOBLE,
and JUSTIN COLLINS,

             Defendants.

-------------------------------------------------- X

Index No. _____/2026

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve notice of appearance, on Plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York, or within the time prescribed by law); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Venue is proper pursuant to N.Y. CPLR Section 507 because the property that is the subject of the foreclosure action is located and situated in New York County.

Dated: New York, New York
      July 6, 2026

SCHINDLER COHEN & HOCHMAN LLP

By: _____
Matthew A. Katz
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6315
mkatz@schlaw.com

*Attorneys for Plaintiff Fortress Credit Advisors LLC*

*TO DEFENDANTS*:

TWG Development, LLC
1301 E. Washington St, Suite 100
Indianapolis, IN 46202

Louis Knoble
1188 Estancia Way
Carmel, IN 46032

Justin Collins
12301 Florida Rd
Fortville, IN 46040

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------- X

FORTRESS CREDIT ADVISORS LLC,

                      Plaintiffs,

            -against-

TWG DEVELOPMENT, LLC, LOUIS KNOBLE,
and JUSTIN COLLINS,

                 Defendants.

---------------------------------------------- X

Index No. _____/2026

**COMPLAINT**

Plaintiff Fortress Credit Advisors LLC ("Fortress") for its complaint against Defendants TWG Development, LLC ("TWG"), Louis "Tony" Knoble ("Knoble"), and Justin Collins ("Collins") alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' deliberate breach of a binding August 29, 2025 Letter of Intent (the "LOI," an excerpt attached hereto as Exhibit A) they executed with Fortress in connection with Fortress's proposed approximately $81.2 million investment in TWG and related transactions with entities owned and controlled by Knoble and Collins (together, the "Transaction").

2. Defendants TWG, Knoble, and Collins induced Fortress to devote substantial time, professional resources, and capital to an intensive due diligence and documentation process by making two central, binding commitments in the LOI:  first, that they would "negotiate exclusively and in good faith" with Fortress to finalize the Transaction; and second, that if the required third-party consents acceptable to Fortress (defined in the LOI as the "Phase 1 Consents") were not obtained, they would reimburse Fortress for the substantial out-of-pocket costs it incurred in pursuing the deal.

3. Fortress relied on those commitments and spent months analyzing the Transaction, performing due diligence, and working with outside counsel and accountants to

move the deal toward closing.   In early 2026, however, Defendants abruptly reversed course, sought to re-trade material terms, and repudiated the Transaction.

4.      Defendants then disavowed the very reimbursement obligation that the parties had negotiated to induce Fortress to perform its work and protect it if the Transaction failed.

5.      Fortress brings this action to hold Defendants to their bargain and recover the damages caused by Defendants' breach, including at least $1,905,647.25 in unreimbursed Transaction costs, benefit-of-the-bargain damages to be proven at trial, reasonable attorneys' fees and costs pursuant to Section 7 of the LOI, and declaratory relief confirming Defendants' contractual obligations.

## PARTIES

6.      Plaintiff Fortress Credit Advisors LLC is a limited liability company formed under the laws of Delaware with a principal place of business at 1345 Avenue of the Americas, 46th Floor, New York, NY 10105.

7.      Defendant TWG Development, LLC is a limited liability company formed in the state of Indiana with a principal place of business at 1301 E. Washington Street, Suite 100, Indianapolis, IN 46202.

8.      Defendant Louis "Tony" Knoble, is the Chief Executive Officer and Co-Founder of TWG and, upon information and belief, is a resident of Indiana.   He executed the LOI on behalf of TWG and separately in his individual capacity as a "Key Principal."

9.      Defendant Justin Collins is the Chief Finance Officer of TWG and, upon information and belief, is a resident of Indiana.   He executed the LOI in his individual capacity as a "Key Principal" (with Knoble, the "Key Principals").

2

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the jurisdictional minimum of the Commercial Division of the Supreme Court of the State of New York, County of New York, exclusive of interest and costs.

11.     This Court has personal jurisdiction over TWG pursuant to New York Civil Practice Law and Rules ("CPLR") 301 and 302 because TWG purposefully transacted business with Fortress in New York, entered into the August 29, 2025 LOI with Fortress knowing Fortress was acting from New York, agreed that the LOI would be governed by New York law, and engaged in negotiations and other Transaction-related communications directed into New York giving rise to Plaintiff's claims.   In addition, TWG consented in the LOI to the exclusive jurisdiction of the state and federal courts located in the Borough of Manhattan, City of New York.

12.     This Court has personal jurisdiction over Knoble pursuant to CPLR 301 and 302 because, acting individually and as a controlling principal of TWG, he purposefully transacted business with Fortress in New York, participated in negotiation and Transaction-related communications directed into New York, executed the LOI in his individual capacity, and the claims against him arise directly from those New York-directed activities.   In addition, Knoble consented in the LOI, which he executed in his individual capacity, to the exclusive jurisdiction of the state and federal courts located in the Borough of Manhattan, City of New York.

13.     This Court has personal jurisdiction over Collins pursuant to CPLR 301 and 302 because, acting individually and as a controlling principal of TWG, he purposefully transacted business with Fortress in New York, participated in negotiation and Transaction-related communications directed into New York, executed the LOI in his individual capacity, and the claims against him arise directly from those New York-directed activities.   In addition, Collins consented in the LOI, which he executed in his individual capacity, to the exclusive jurisdiction of the state and federal courts located in the Borough of Manhattan, City of New York.

14.     Venue is proper in New York County pursuant to CPLR 503 and the parties' forum-selection agreement because a substantial part of the events or omissions giving rise to

3

Plaintiff's claims occurred in the Borough of Manhattan, City of New York, including negotiations, communications, and breaches related to the LOI.  Venue is also proper because Defendants agreed in the LOI to the exclusive jurisdiction of the state and federal courts located in the Borough of Manhattan, City of New York.

## STATEMENT OF FACTS

15.    On August 29, 2025, Fortress, on the one hand, and TWG, Knoble, and Collins, on the other hand, executed a LOI, together with an attached Term Sheet (the "Term Sheet"), that amended and restated in its entirety a prior term sheet dated May 21, 2025.

16.    The LOI set forth the material terms and conditions of Fortress's proposed approximately $81.2 million investment in TWG, together with related transactions involving Knoble and Collins.  The signature page likewise reflects that, in addition to TWG's execution of the LOI, Knoble and Collins each separately signed in their own capacities as Key Principals.

17.    Although the LOI contemplated that the broader Transaction would later be documented in definitive agreements, it expressly provides that Sections 2 through 10 constitute "Binding Obligations" that are "binding on the Parties under all circumstances."

18.    Among other things, the LOI granted Fortress an exclusive due diligence period through June 30, 2026, during which the parties were to conduct diligence and negotiate definitive documentation to effectuate the Transaction.

19.    Section 4(a) of the LOI further provided that, during that exclusivity period, TWG and the Key Principals were required to negotiate exclusively and in good faith with Fortress with the goal of finalizing and executing definitive documentation before the due diligence period expired.

20.    Section 4(b) of the LOI separately provides that if consents acceptable to Fortress were not obtained before the due diligence period expired, TWG and the Key Principals would, on a joint and several basis, reimburse Fortress on demand for all out-of-pocket costs and

4

expenses incurred by or on behalf of Fortress and its affiliates in pursuing the Transaction, including, without limitation, the costs of drafting and negotiating definitive documentation.

21.    The Term Sheet likewise makes clear that one of TWG's businesses, Big Red Liquors, Inc. ("BRL"), was embedded in the deal structure in multiple material respects.

22.    For example, the negotiated Term Sheet requires:  (i) consent approving the pledge of BRL shares, to the extent necessary, to be provided as part of the Phase I Consents; (ii) pledges of BRL shares as "Additional Security" for Fortress's protection; and (iii) distributions from BRL into a waterfall distribution to be paid to Fortress.

23.    Additionally, Schedule 1 ("Schedule 1") of the Term Sheet identified that one use of the Fortress investment would be to pay down existing debt provided by a third-party lender (the "Third-Party Lender").   While Fortress was aware of the debt, TWG had failed to disclose to Fortress that TWG's relationship with the Third-Party Lender had deteriorated, requiring it to obtain substitute debt on an expedited basis.

24.    In reliance on Defendants' binding commitments, from September 2025 through the middle of February 2026, Fortress devoted substantial time, effort, and expense to evaluating the Transaction and moving it toward closing.   In particular, Fortress hired outside counsel to draft various contracts necessary for the proposed Transaction, form the necessary companies, and conduct legal due diligence.   Fortress also retained external accountants to conduct the financial due diligence necessary and appropriate for an $81 million investment.

25.    Fortress's out-of-pocket costs and expenses for this work totals $1,905,647.25.

26.    On information and belief, in December 2025 or January 2026, without Fortress's consent, TWG obtained a term loan, which it used to refinance the existing Third-Party Lender debt.   With new money in hand, TWG decided it no longer needed Fortress's investment and stopped working in good faith toward closing.

27.    In particular, TWG failed to provide meaningful comments on drafts of key Transaction documents—including the loan documents, the operating agreement, and the joint venture agreement—and left critical items on the parties' legal checklist unaddressed, thereby

5

stalling progress toward definitive documentation and closing. The joint venture agreement, for example, has been awaiting TWG's review since at least December 12, 2025.

28. On or about February 3, 2026, Knoble proposed either terminating the due diligence process outright or renegotiating the Term Sheet.

29. The changes that Knoble sought with respect to the Term Sheet were materially different from the existing document. Among other things, Knoble sought to amend or eliminate multiple provisions of the executed Term Sheet that were fundamental to the parties' bargain, including provisions governing distributions, guarantees, and pledged collateral—core economic and structural protections that Fortress had negotiated and included in the Term Sheet and which were part of the consideration for committing substantial time and expense to the Transaction.

30. A few days later, on February 11, 2026, Knoble demanded yet another sweeping revision: that BRL be removed from the Transaction altogether, notwithstanding that the LOI and Term Sheet expressly incorporated BRL as a subject of required consents, pledged collateral, and waterfall distributions.

31. Despite Defendants' efforts to discard much of the parties' negotiated Term Sheet, Fortress continued negotiating and, on February 13, 2026, emailed Defendants proposed modified deal terms that substantially acceded to the changes that Defendants had demanded.

32. Fortress's efforts proved futile. Later in February 2026, Knoble repudiated the Transaction, telling Fortress that Defendants would not proceed with it. Knoble confirmed this repudiation in an email dated March 16, 2026, stating confirmed that the Transaction "will not come to fruition."

33. After Defendants repudiated the Transaction, on March 2, 2026, Fortress transmitted its legal and accounting invoices and requested reimbursement pursuant to Section 4 of the LOI. Knoble responded that, despite Defendants' decision not to proceed with the Transaction, Defendants nevertheless intended to continue pursuing the Phase I Consents in an effort to avoid the reimbursement obligation they had undertaken in the LOI.

6

34. On March 16, Knoble proposed paying $250,000 of Fortress' out of pocket expenses in exchange for terminating the LOI.

35. On April 13, 2026, even after Knoble had confirmed that the deal was dead, Dustin Detzler, TWG's general counsel, requested additional information and documents from Fortress purportedly in furtherance of TWG's pursuit of the Phase I Consents.

36. Given Defendants' repudiation, Fortress recognized that Defendants were attempting to use a post-repudiation consent exercise as a vehicle to evade the reimbursement obligation the LOI was designed to protect. Fortress declined to participate in that exercise.

37. On May 19, 2026, Fortress's counsel sent Defendants a formal demand letter seeking payment of Fortress's out-of-pocket costs and expenses, totaling $1,905,647.25, within ten business days.

38. Ultimately, the Transaction never closed. Defendants failed to obtain the Phase I Consents by June 30, 2026 and have refused to reimburse Fortress for its out-of-pocket costs and expenses as required by Section 4(b) of the LOI.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**(Breach of Contract (Failure to Negotiate in Good Faith))**
**Against All Defendants**

39. Fortress repeats and realleges the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

40. The August 29, 2025 LOI is a valid and binding contract among Fortress, TWG, Collins, and Knoble. The LOI expressly provides that Sections 2 through 10 constitute "Binding Obligations" that are "binding on the Parties under all circumstances."

41. Section 4(a) of the LOI required TWG and the Key Principals to negotiate exclusively and in good faith with Fortress during the due diligence period with the goal of finalizing and executing definitive documentation before that period expires on June 30, 2026.

7

42. Fortress performed its obligations under the LOI and, in reliance on Defendants' binding commitments, devoted substantial time, professional resources, and expense to evaluating the Transaction, conducting due diligence, and working toward definitive documentation and closing. Fortress incurred at least $1,905,647.25 in out-of-pocket costs and expenses in doing so.

43. Defendants breached Section 4(a) of the LOI by failing to negotiate exclusively and in good faith with Fortress during the due diligence period.

44. As set forth above, Defendants stalled the Transaction by failing to provide meaningful comments on drafts of key Transaction documents, including the loan documents, the operating agreement, and the joint venture agreement, and by leaving critical items on the parties' legal checklist unaddressed, thereby impeding progress toward definitive documentation and closing.

45. Defendants' breach became explicit in February 2026, when Knoble advised Fortress that Defendants would no longer proceed with the Transaction on the agreed terms and thereafter proposed either terminating the due diligence process outright or fundamentally recasting the deal.

46. Defendants further breached the LOI by seeking to materially amend or eliminate multiple provisions of the executed Term Sheet that were fundamental to the parties' bargain, including provisions governing distributions, guarantees, pledged collateral, and the role of BRL in the Transaction.

47. Notwithstanding Defendants' efforts to re-trade the negotiated terms, Fortress offered to modify the deal largely consistent with TWG's proposed modifications. However, even with Fortress's offer, it became clear Defendants had no interest in proceeding.

48. Knoble thereafter confirmed in writing that the Transaction "will not come to fruition," thereby repudiating Defendants' obligation to continue negotiating in good faith through the expiration of the due diligence period.

49. Defendants' conduct constituted a material breach of Section 4(a) of the LOI.

8

50.     As a direct and proximate result of Defendants' breach, Fortress has suffered damages, including at least $1,905,647.25 in out-of-pocket costs and expenses, as well as benefit-of-the-bargain damages in an amount to be proven at trial.

51.     Fortress is entitled to recover compensatory damages, pre-judgment interest, post-judgment interest, reasonable attorneys' fees and costs pursuant to Section 7 of the LOI, and such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### (Breach of Contract (Failure to Reimburse Costs)) Against All Defendants

52.     Fortress repeats and realleges the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53.     Section 4(b) of the LOI provides that if all Phase I Consents acceptable to Fortress were not received before the expiration of the due diligence period, then TWG and the Key Principals would, on a joint and several basis, reimburse Fortress on demand for all out-of-pocket costs and expenses incurred by or on behalf of Fortress and its affiliates in pursuing the Transaction, including, without limitation, the costs of drafting and negotiating definitive documentation.

54.     Fortress incurred at least $1,905,647.25 in out-of-pocket costs and expenses in connection with pursuing the Transaction.

55.     As alleged above, before the due diligence period expired, Defendants repudiated the Transaction, refused to proceed on the agreed terms, sought to strip out material components of the negotiated deal structure, and stated that the Transaction "will not come to fruition."   In doing so, Defendants made clear that they would not perform the Transaction contemplated by the LOI and attached Term Sheet.

56.     After Defendants repudiated the Transaction, Fortress formally demanded that Defendants reimburse Fortress for at least $1,905,647.25 in out-of-pocket costs and expenses. Defendants have refused to do so.

9

57.     Defendants never satisfied Section 4(b)'s condition to provide Phase I Consents acceptable to Fortress.   Likewise, Defendants never satisfied the resulting contractual obligation to reimburse Fortress for "all" of its "out-of-pocket" costs and expenses incurred in connection with pursuing the Transaction, including, without limitation, in drafting and negotiating the deal documents.

58.     Defendants' failure to reimburse Fortress upon demand constitutes a breach of Section 4(b) of the LOI.

59.     As a direct and proximate result of Defendants' breach, Fortress has suffered damages of at least $1,905,647.25.

60.     Fortress is entitled to recover compensatory damages of at least $1,905,647.25, pre-judgment interest, post-judgment interest, reasonable attorneys' fees and costs pursuant to Section 7 of the LOI, and such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**
**Against All Defendants**

61.     Fortress repeats and realleges the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

62.     Under New York law, every contract contains an implied covenant of good faith and fair dealing, which prohibits either party from acting in a manner that, although not expressly forbidden by the contract, would deprive the other of the fruits of the bargain.

63.     As alleged above, Defendants abandoned the Transaction after Fortress had already devoted substantial time, professional resources, and expense to diligence and documentation, and then took the position that they could continue pursuing consents after repudiation in an effort to nullify the reimbursement protection for which Fortress had bargained. That conduct frustrated the purpose of the LOI, deprived Fortress of the benefit of its bargain, and rendered illusory the contractual protection Defendants had granted to induce Fortress to incur those costs.

10

Case 1:26-cv-06735-PAE     Document 1-1     Filed 08/06/26     Page 14 of 32

64.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Fortress has suffered damages, including at least $1,905,647.25 in unreimbursed out-of-pocket costs and expenses, as well as benefit-of-the-bargain damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Fortress respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

1.     Compensatory damages in an amount to be determined at trial, including at least $1,905,647.25 in unreimbursed out-of-pocket costs and expenses incurred by Fortress in pursuing the Transaction;

2.     Benefit-of-the-bargain damages in an amount to be determined at trial;

3.     Pre-judgment interest as permitted by law;

4.     Post-judgment interest as permitted by law;

5.     Reasonable attorneys' fees and costs pursuant to Section 7 of the LOI; and

6.     Such other and further relief as the Court deems just and proper.

Dated: New York, New York
        July 6, 2026

SCHINDLER COHEN & HOCHMAN LLP

By: _____
Matthew A. Katz
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6315
mkatz@schlaw.com

*Attorneys for Plaintiff Fortress Credit Advisors LLC*

11

# EXHIBIT A

Docusign Envelope ID: A53F8F6F-6B74-4122-774D-C9534E6C3458

 **FORTRESS**

2494 Sand Hill Road
Menlo Park, CA 94025
415-284-7400

August 29, 2025

TWG Development, LLC
1301 E. Washington St, Suite 100
Indianapolis, IN 46202
Attn: Justin Collins and Louis Knoble

*Re:     Offer to Invest in TWG Development*

Gentlemen,

    We enjoyed speaking with you and discussing the possibility of Fortress Credit Advisors LLC or one of its affiliates ("**Fortress**") investing in TWG Development, LLC (the "**Company**"). Fortress and the Company are sometimes referred to herein each individually as a "**Party**" and collectively as the "**Parties**". This letter and the Proposed Terms attached hereto (collectively, this "**Term Sheet**") hereby amend and restate in its entirety that certain Term Sheet dated as of May 21, 2025 amongst the Parties.

    1.    Exhibit A attached hereto (the "**Proposed Terms**") outlines certain of the proposed material terms and conditions regarding the proposed investment by Fortress in the Company and related transactions among Fortress and Justin Collins and Louis Knoble, the controlling principals of the Company (the "**Key Principals**") (collectively, the "**Transaction**").

    2.    This Term Sheet is for discussion purposes, is intended as an outline only of the basic terms upon which Fortress willing to consider entering into the Transaction, does not address all matters upon which agreement must be reached in order for the Transaction to be consummated, and is not intended to be, and shall not be, a commitment by either Party to enter into the Transaction. With the exception of this Section 2 through Section 10 (inclusive) of this letter (collectively, the "**Binding Obligations**"), which shall be binding on the Parties under all circumstances, this Term Sheet shall not be a binding commitment between the Parties to enter into the Transaction. A binding commitment between the Parties regarding the Transaction will exist among the Parties only if and to the extent set forth in definitive, binding documentation regarding the Transaction executed and delivered by the Parties.

    3.    Fortress shall be given an exclusive due diligence period (the "**Due Diligence Period**") which shall commence on the date of this Term Sheet and expire on June 30, 2026 in order to conduct due diligence. Promptly following the mutual execution and delivery of this Term Sheet, the Parties shall commence negotiation of definitive documentation to effectuate the Transaction (collectively, the "**Definitive Documentation**"). If Definitive Documentation has not been executed on or prior to the expiration of the Due Diligence Period, then either Party shall have the right, in its sole and absolute discretion, to terminate this Term Sheet and determine not to consummate the Transaction.

    4.    In consideration of Fortress's expenditure of time and expense in evaluating the Transaction, (a) commencing as of execution of this Term Sheet and continuing until expiration of the Due Diligence Period, neither the Company nor the Key Principals (i) shall (and shall not permit any of the Company's members, partners, shareholders, affiliates, subsidiaries, employees, officers, directors, agents or representatives to), directly or indirectly, enter into any agreement, make or accept any offer or otherwise engage in any discussion or negotiation with any other party relating to an investment in the Company and

4896-7288-4836.2

INDEX NO. 653968/2026
NYSCEF DOC. NO. 2

Case 1:26-cv-06735-PAE   Document 1-1   Filed 08/06/26   Page 17 of 32

RECEIVED NYSCEF: 07/07/2026

(ii) shall negotiate exclusively and in good faith with Fortress with the goal of finalizing and executing Definitive Documentation at or prior to expiration of the Due Diligence Period and (b) if all of the "Phase I Consents" (as noted in the Proposed Terms) are not received by the Parties prior to the expiration of the Due Diligence Period, then the Company and the Key Principals shall, on a joint and several basis, reimburse Fortress on demand for all out-of-pocket costs and expenses incurred by or on behalf of Fortress and its Affiliates in connection with pursuing the Transaction, including, without limitation, in drafting and negotiating the forms of Definitive Documentation.

5.        The Company and the Key Principals agree to keep the existence and contents of this Term Sheet and the Transaction confidential, except as (i) may be required by a judicial or administrative proceeding or as otherwise required by law and/or, (ii) on a strictly confidential and "need to know" basis, solely to their (and their affiliates') respective directors, officers, employees, professional advisors, and actual or potential partners, investors and lenders in each case who agree to keep the same confidential. The provisions of this Section 6 shall survive the expiration or termination of this Term Sheet.

6.        This Term Sheet shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be performed within such State. The parties hereto (a) irrevocably consent to the exclusive jurisdiction of the state and federal courts located in the Borough of Manhattan of the City of New York, and (b) irrevocably consent that any process or notice or motion or other application to the court or judge thereof may be served within or outside of the State of New York by registered or certified mail or nationally-recognized overnight delivery service, or by personal service, provided a reasonable time for appearance is allowed. EACH PARTY TO THIS TERM SHEET HEREBY IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING, WHETHER AT LAW OR EQUITY, BROUGHT BY ANY OF THEM IN CONNECTION WITH THIS TERM SHEET AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

7.        If any legal action, suit or proceeding is commenced between the Parties regarding their respective rights and obligations under this Term Sheet, the prevailing party shall be entitled to recover, in addition to damages or other relief, reasonable out of pocket costs and expenses, reasonable out of pocket attorneys' fees and court costs (including, without limitation, reasonable out of pocket expert witness fees). As used herein, the term "prevailing party" shall mean the party which obtains the principal relief it has sought, whether by compromise settlement or judgment.  If the Party which commenced or instituted the action, suit or proceeding shall dismiss or discontinue it without the concurrence of the other Party, such other Party shall be deemed the prevailing party.  The provisions of this Section 8 will survive any expiration or termination of this Term Sheet.

8.        Each Party represents and confirms that it has not engaged or worked with a broker or agent in connection with the Transaction other than Northmarq ("**Broker**"). Each Party shall indemnify, defend and hold harmless the other from and against all costs, finder's fees, commissions, concessions, remuneration or similar fee or compensation incurred by the other Party relating to the Transaction payable to anyone other than Broker to the extent claimed through such party.  The provisions of this Section 10 will survive any expiration or termination of this Term Sheet.

9.        This Term Sheet supersedes all prior discussions, agreements, negotiations and understandings, whether oral or written, of the parties with respect to the Transaction. This Term Sheet may be executed in two or more counterparts, each of which, when so executed and delivered, shall be deemed to be an original, but all of which counterparts, taken together, shall constitute one and the same instrument. Counterparts of this Term Sheet may be executed and delivered by the parties as PDF copies or via other electronic means and any such electronic copy of an executed counterpart shall be binding and of the same force and effect as an original executed counterpart. Any amendment hereto to be effective must be in

Docusign Envelope ID: A939d4cf-68c7-42b2-874D-19542Eb63488

writing and signed by all parties hereto. No waiver of any provision hereof shall be effective as against any party hereto unless such party has waived such terms or provision in writing.

10.    Should the terms and conditions of this Term Sheet meet with your approval, please indicate your acceptance by signing this Term Sheet and returning a copy of this Term Sheet to Fortress by 5:00 p.m. PST on August 29, 2025. If an executed counterpart of this Term Sheet is not delivered prior to such time, then this Term Sheet shall be deemed null and void *ab initio*, and shall be of no further force or effect.

[*Signature Page Follows*]

DocuSign Envelope ID: A53Cd6F-C627-4E52-074D-19A43DC634B8

Case 1:26-cv-06735-PAE    Document 1-1    Filed 08/06/26    Page 19 of 32

Sincerely,

**FORTRESS CREDIT ADVISORS LLC**

By: _____

Name: David Hammerman

Title: Chief Operating Officer

Agreed and Accepted as of the date first written above:

**TWG DEVELOPMENT, LLC**

By: _____
2771B54E44CA443...

Name: Louis Knoble

Title: CEO

Key Principals

By: _____
BEAD4CE83C1A4C3...

Name: Justin Collins

By: _____
2771B54E44CA443...

Name: Louis Knoble

Signature Page _ Fortress/TWG Term Sheet

INDEX NO. 653968/2026
RECEIVED NYSCEF: 07/07/2026

Docusign Envelope ID: A53C8F0F-5B74-4E2D-84D4-1942EE9F345B

## EXHIBIT A

## OUTLINE OF PROPOSED TERMS AND CONDITIONS

1. **Estimated Company Valuation:** $155,000,000 (i.e. 2025E Company EBITDA x 8.0) (subject to Fortress due diligence) (the "**Company Value**").

2. **Fortress Investment**: an amount equal to the sum of (a) $[81.2] million plus (b) TBD closing costs, in exchange for an initial 35% ownership interest in the Company and the nominal interest in TWG GP III described below. A portion of Fortress's investment in the estimated amount of $35,428,728 (the "**Company Component**") will be applied to repay certain obligations of the Company as detailed on **Schedule 1** hereto, and a portion of Fortress's investment in the estimated amount of $45,771,272 plus Transaction closing costs (the "**Balance Sheet Component**") will be applied to repay certain obligations related to the real estate owned by TWG GP III LLC (an entity controlled by the Key Principals) ("**TWG GP III**") and its subsidiaries, which are owned through the Key Principals' balance sheet outside of the Company, as detailed on **Schedule 1** hereto and to fund a shortfall reserve (the "**Shortfall Reserve**") in the amount of $3,500,000 for shortfalls at the Balance Sheet Real Estate Assets.

3. **Fortress Minimum Return**: means the sum of (i) the return of all of Fortress's invested capital (including the Company Component and the Balance Sheet Component) plus (ii) a 17.0% annual rate of return on all such invested and then outstanding capital (compounding monthly) (collectively, the "**Fortress Minimum Return**"). The portion of the Fortress Minimum Return consisting of the return of the principal amount of the Balance Sheet Component plus a 17.0% annual rate of return on the Balance Sheet Component shall be referred to herein as the "**BSC Minimum Return**". The portion of the Fortress Minimum Return consisting of the return of the principal amount of the Company Component plus a 17.0% annual rate of return on the Company Component shall be referred to herein as the "**CC Minimum Return**".

   a. On a monthly basis, the Company shall be required to pay to Fortress a current return on the outstanding Balance Sheet Component (the "**Current Return**") in the amount of (i) 0% during the first twelve (12) months following Closing, (ii) a 5% annual rate of return during months 13-24 after Closing and (iii) a 10% annual rate of return on the outstanding Balance Sheet Component thereafter.

   b. On a semi-annual basis (i.e., every 6 months) starting on the date which is 18 months after the Closing, the Company shall be required to pay to Fortress a TBD minimum amount (the "**Amortization Payment**") so that the BSC Minimum Return shall have been paid in full by the date which is 48 months after the Closing.

   c. An example of the calculation of the Fortress Minimum Return and the Current Return is set forth on **Schedule 2** hereto.

4. **Balance Sheet Real Estate**:

   a. The Key Principals collectively own 100% of TWG GP III, which owns (i) 88% of TWG GP IV LLC ("**TWG GP IV**") and (ii) 94% of TWG GP V LLC ("**TWG GP V**"). TWG GP IV and TWG GP V own interests in various real estate assets, including their interests in the market rate and affordable housing developments listed on **Schedule 3** hereto (the "**Balance Sheet Real Estate Assets**").

Docusign Envelope ID: A539D-DF-687-4E-B23-74D-1E-FAE-98-3C48

Case 1:26-cv-06735-PAE    Document 1-1    Filed 08/06/26    Page 21 of 32

b.  From and after the closing of the Transaction (the "**Closing**"), all new real estate interests acquired directly or indirectly by the Key Principals shall be owned in a newly formed entity ("**TWG GP VI**"). TWG GP IV, TWG GP V and TWG GP VI are collectively referred to herein as the "**Balance Sheet Real Estate Entities**".

c.  At Closing, Fortress will be admitted as a member of TWG GP III with a nominal interest in TWG GP III and the LLC agreement for TWG GP III will be amended and restated and will provide that Fortress will have the right, upon the occurrence of a Trigger Event, to require the Key Principals to cause TWG GP III to cause TWG GP IV and/or TWG GP V to sell such number of properties/interests in properties as is needed, as identified by Fortress, for no less than the applicable Minimum Release price, for Fortress to be repaid in full (market rate housing developments to be sold within 9 months of Fortress notifying the Key Principals of its election to force a sale, and affordable housing developments to be sold within 15 months of Fortress notifying the Key Principals of its election to force a sale).  Fortress will be redeemed as a member of TWG GP III  upon Fortress receiving the Fortress Minimum Return.  Failure of such sales to occur within the foregoing timeframes will constitute a "**Sale Event Failure**".

d.  Notwithstanding the provisions under "Fortress Control Rights" below, sales of assets owned by the Balance Sheet Real Estate Entities will be permitted without Fortress's approval so long as the sale price results in equity distributions to the applicable Balance Sheet Real Estate Entity in an amount not less than a minimum amount to be agreed upon during diligence and set forth in Definitive Documentation (i.e., the midpoint of the BOV's (or TBD market value for deals that BOVs were not obtained)) (for each asset, the "**Minimum Release Price**").

e.  Shortfalls in available funds at the Balance Sheet Real Estate Assets will be funded from the Shortfall Reserve subject to customary draw mechanisms to be detailed in the Definitive Documentation.  To the extent the Balance Sheet Entities require funds in excess of the amounts in the Shortfall Reserve to cover shortfalls (a "**TWG GP Net Shortfall**"), the Key Principals shall fund such TWG GP Net Shortfalls.  Failure to do so shall constitute a default under the Definitive Documentation.  In addition to any other available remedies, Fortress will have the option to fund any such unfunded TWG GP Net Shortfall and the same shall be added to the Balance Sheet Component.

5.  **Waterfall:**

a.  The Company will not make any distributions for the first 12 months following Closing. During months 13-24 following Closing the Company will distribute at least 50% of free cash flow, and thereafter will distribute at least 75% of free cash flow annually.

    [NTD: Tax analysis, tax distributions, etc. TBD]

b.  All distributions by the Company and all distributions by the Balance Sheet Real Estate Entities and, during a Trigger Event, all distributions to TWG GP III and/or the Key Principals from Big Red Liquor shall, in each case, be paid as follows:

    i.  First, 100% to Fortress until Fortress has received the BSC Minimum Return (with any amounts first applied to the Fortress Minimum Return on the Balance Sheet Component and then to the return of the Balance Sheet Component);

FILED: NEW YORK COUNTY CLERK 07/07/2026 10:44 AM
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 07/07/2026
Docusign Envelope ID: ...
Case 1:26-cv-06735-PAE    Document 1-1    Filed 08/06/26    Page 22 of 32

    ii.   Second, 100% to Fortress until Fortress has received the CC Minimum Return (with any amounts first applied to the Fortress Minimum Return on the Company Component and then to the return of the Company Component); and

    iii.   Thereafter, as applicable, (x) pro rata to the respective shareholders of the Company and/or the Balance Sheet Real Estate Entities, as applicable, or (y) to TWG GP III and/or the Key Principals as it relates to the distributions from Big Red Liquor.

6. **Future Capital Needs of the Company (if any)**:  it is not anticipated that the Company will require additional cash infusions to cover operations, however, if the Company needs additional capital in the future to cover shortfalls (including without limitation operating shortfalls, repayment of maturing debt or construction overruns) ("**Required Capital**"), then the shareholders of the Company will fund their pro rata percentage of such Required Capital, and any Required Capital funded by Fortress on behalf of any non-Fortress shareholders will be added to the Balance Sheet Component.

7. **Future Company Acquisitions/Developments**:  it is expected that going forward, the Company will fund the GP capital requirement for pre-development/land costs of going forward market rate and affordable deals through either TWG GP VI or, with the consent of Fortress, a line of credit for the benefit of the Company.  Fortress will receive ownership of 35% (or 50% if Fortress exercises its right to increase its ownership interests in the Company) in the GP interest in any such deal.

8. **Future Fortress LP and GP Capital:** Fortress is willing to fund LP capital in joint ventures with the Company to finance future acquisitions and developments subject Fortress approval of such assets. The Company shall also fund the GP capital in any such deals. By way of example, if the deal is 90/10 (LP to GP equity), Fortress may invest the 90% as the LP, and the Company would contribute the GP capital.

9. **Fortress Control Rights**: Fortress will have representation on the board of directors of the Company and will receive major decision approval rights (i.e. annual budget approvals, Company debt and refinances, new developments, asset sales and refinances (subject to Paragraph 7 procedures to be further laid out in the Definitive Documentation), etc.) to be set forth in Definitive Documentation. Fortress will have the right to take a controlling position on the board of directors of the Company upon the occurrence of any of the following (each, a "**Removal Event**"): (i) fraud, gross negligence or willful misconduct by the Company or any Key Principal, (ii) failure of the Company to pay the Current Return for three (3) consecutive months, provided that by the end of said 3rd month, all accrued and unpaid Current Return has been paid, (iii) failure of the Company to pay any Amortization Payment, (iv) a Sale Event Failure, (v) failure of the Key Principals to fund any TWG GP III Net Shortfall, (vi) failure of non-Fortress shareholders to fund Required Capital, (vii) TBD performance thresholds to be set forth in Definitive Documentation, (viii) material breach of Definitive Documentation (subject to appropriate cure rights to be detailed therein), (ix) failure to obtain 75% of the Phase II Consents within 12 months after the Closing, or (x) if the Key Principals violate certain minimum ownership/key man control requirements to be set forth in Definitive Documentation or fail to spend the majority of their time on Company business.

10. **Additional Security**: To secure repayment of the Fortress Minimum Return and the obligations of the Key Principals, Company and/or Balance Sheet Real Estate Entities under any of the Definitive Documents, Fortress will receive the following collateral pledge:

DocuSign Envelope ID: A53CD4F6E7421634740D19E2FE6B34B8

   a. Pledge of shares held by TWG GP III and/or the Key Principals in Big Red Liquor.

11. **Guaranty**: the Key Principals will jointly and severally guarantee to Fortress (1) the payment of the BSC Minimum Return, (2) the payment of the full Fortress Minimum Return in the event of the occurrence of a Removal Event (other than the performance test, failure to pay the Current Return or the failure to pay the Amortization Payments), and (3) the funding to TWG GP III of any TWG GP III Net Shortfall. The payment guaranty shall become due and payable upon the occurrence of a Removal Event.

12. **Forced Sale Right**: Upon the occurrence of a Trigger Event, Fortress will have the option to require the Key Principals to cause TWG GP III to cause the TWG GP IV or TWG GP V to sell such number of properties/interests in properties as is needed, as identified by Fortress, for no less than the applicable Minimum Release price, for Fortress to be repaid in full (market rate housing developments to be sold within 9 months of Fortress notifying the Key Principals of its election to force a sale, and affordable housing developments to be sold within 15 months of Fortress notifying the Key Principals of its election to force a sale). A "**Trigger Event**" means the earlier of (i) the occurrence of a Removal Event or (ii) the date which is 5 years after Closing if at such time Fortress has not received the full Fortress Minimum Return.

13. **Company Forced Sale Right**: At any time after the earlier of the tenth (10th) anniversary of the Closing and a Removal Event, Fortress shall have the right to force a sale of the Company, subject to a right of first offer in favor of the Key Principals set forth in the Definitive Documents.

14. **Non-Compete**: For so long as Fortress remains a shareholder of the Company, the Key Principals shall not (directly or through another venture or company) engage in business activities that are competitive with the Company. A burn off to be discussed as part of the Definitive Documents.

15. **Company Warrants:** The Definitive Documentation will provide that Fortress will have a right at any time following Closing to purchase an additional 15% of the equity in the Company at a price based on the Company Value (as defined above).

16. **Structure**. The Parities agree Fortress and the Key Principals will form a Delaware limited liability company ("**TWG Development Holdco**") to acquire 100% of the limited liability company interests in the Company, and all references in this Exhibit A to the "Company" shall, as applicable, refer to the TWG Development Holdco.

17. **Required Consents**.

   a. The Closing will be conditioned upon receipt of consents acceptable to Fortress from all requisite third party lenders, investors and other financing partners which affirmatively approve the following: (i) Fortress being admitted as a member of TWG GP III with a nominal interest in TWG GP III and the economic rights set forth herein; and (ii) the implementation of TWG Development Holdco and Fortress acquiring an initial 35% interest in the Company (and up to 50% of the interests in the Company) (and all rights related thereto); and (iii) the pledge of shares in Big Red Liquor (in each case, to the extent such consents are required under the applicable documents) (the "**Phase I Consents**").

   b. The Key Principals will use commercially reasonable efforts to obtain within 12 months after Closing consents acceptable to Fortress from all requisite third party lenders, investors and other financing partners on all market rate Balance Sheet Real Estate Assets which

Docusign Envelope ID: A83381CF-C8E7-4E12-9674D-195748F63408
Case 1:26-cv-06735-PAE Document 1-1 Filed 08/06/26 Page 24 of 32

affirmatively approve of Fortress having the right to take control upon the occurrence of a Trigger Event (the "**Phase II Consents**").

.

Case 1:26-cv-06735-PAE    Document 1-1    Filed 08/06/26    Page 25 of 32

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
-----------------------------------------------------X

FORTRESS CREDIT ADVISORS LLC,

                          Plaintiff(s),

      -against-

Index No.: 653968/2026

TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,

**AFFIDAVIT OF SERVICE**

                          Defendant(s).
-----------------------------------------------------X

STATE OF INDIANA      )
                       s.s :
COUNTY OF HAMILTON  )

      BAMIDELLE OJO, being duly sworn, deposes and says that he is an agent of KEATING & WALKER ATTORNEY SERVICE, INC. at 116 Nassau Street, Suite 816, New York, New York 10038, is over the age of eighteen years and is not a party to the action.

      That on the 9th day of June, 2026, at approximately 7:21 p.m., deponent served a true copy of the **Summons (endorsed with the index number and date of filing); Complaint (with Exhibit A); Notice of Electronic Filing** upon Justin Collins at 12301 Florida Road, Fortville, Indiana 46040 by personally delivering and leaving the same with Justin Collins at that address. At the time of service deponent asked Justin Collins whether he is in active military service for the United States or for the State in any capacity whatsoever or is dependent upon such a person and received a negative reply.

      Justin Collins appears to be a Caucasian male, approximately 52 years of age, is approximately 5 feet, 6 inches tall, weighs approximately 200 pounds, with brown hair and brown eyes.

Sworn to before me this
_13_ day of July, 2026

_____
NOTARY PUBLIC, STATE OF INDIANA

_____
BAMIDELLE OJO

KIM MARTIN DE LA PENA
Notary Public
Hamilton County - State of Indiana
Commission Number NP0765399
My Commission Expires Aug 20, 2033

(1)

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
-------------------------------------------------------X

FORTRESS CREDIT ADVISORS LLC,

          Plaintiff(s),

    -against-

TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,

          Defendant(s).
-------------------------------------------------------X

Index No.: 653968/2026

**CERTIFICATE OF CONFORMITY**

STATE OF INDIANA    )
               s.s :
COUNTY OF HAMILTON  )


On this __/3__ day of July, 2026, BAMIDELLE OJO, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument (Affidavit of Service upon Justin Collins) and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.


Dated: **07/13/2026**

_____
NOTARY PUBLIC, INDIANA

KIM MARTIN DE LA PENA
Notary Public
Hamilton County - State of Indiana
Commission Number NP0765399
My Commission Expires Aug 20, 2033

(2)

Case 1:26-cv-06735-PAE    Document 1-1    Filed 08/06/26    Page 27 of 32

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
------------------------------------------------------X

FORTRESS CREDIT ADVISORS LLC,

Plaintiff(s),                          Index No.: 653968/2026

-against-

TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,          **AFFIDAVIT OF SERVICE**

Defendant(s).
------------------------------------------------------X

STATE OF INDIANA          )
                          s.s :
COUNTY OF HAMILTON        )

     PATRICIA MAGNUSON, being duly sworn, deposes and says that she is an agent of KEATING & WALKER ATTORNEY SERVICE, INC. at 116 Nassau Street, Suite 816, New York, New York 10038, is over the age of eighteen years and is not a party to the action.

     That on the 9th day of June, 2026, at approximately 7:05 p.m., deponent served a true copy of the **Summons (endorsed with the index number and date of filing); Complaint (with Exhibit A); Notice of Electronic Filing** upon Louis Knoble at 11188 Estancia Way, Carmel, Indiana 46032 by personally delivering and leaving the same with Chloe Lamur, a person of suitable age and discretion employed and residing (as a live-in Au Pair) at that address, the actual place of residence of the defendant. At the time of service deponent asked whether Louis Knoble is in active military service for the United States or for the State in any capacity whatsoever or is dependent upon such a person and received a negative reply.

     Chloe Lamur appears to be a Caucasian female, approximately 23 years of age, is approximately 5 feet, 6 inches tall, weighs approximately 135 pounds and has black hair.

     That on the 13th day of July, 2026, deponent served another copy of the foregoing by enclosing a copy in a securely sealed and postpaid wrapper with the words "PERSONAL and CONFIDENTIAL" written on the same, and not indicating on the outside that it is from an attorney or concerns a legal matter, and depositing the same into an official depository maintained by the Government of the United States and State of Indiana, addressed as follows:

**Mr. Louis Knoble**
**11188 Estancia Way**
**Carmel, IN 46032**

Sworn to before me this
14 day of July, 2026

                                PATRICIA MAGNUSON

**NOTARY PUBLIC, STATE OF INDIANA**

PAUL H SLOAN, III
Notary Public - Seal
Boone County - State of Indiana
Commission Number NP0672999
My Commission Expires Sep 15, 2031

(1)

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK

----------------------------------------------------------X

FORTRESS CREDIT ADVISORS LLC,

                              Plaintiff(s),

       -against-

Index No.: 653968/2026

TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,

**CERTIFICATE OF CONFORMITY**

                              Defendant(s).

----------------------------------------------------------X

STATE OF INDIANA       )
                        s.s :
COUNTY OF HAMILTON   )

On this 14 day of July, 2026, PATRICIA MAGNUSON, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument (Affidavit of Service upon Louis Knoble) and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Dated: 07/14/2026

_____
NOTARY PUBLIC, INDIANA

PAUL H SLOAN, III
Notary Public - Seal
Boone County - State of Indiana
Commission Number NP0672999
My Commission Expires Sep 15, 2031

(2)

Case 1:26-cv-06735-PAE    Document 1-1    Filed 08/06/26    Page 29 of 32

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
-------------------------------------------------------X

FORTRESS CREDIT ADVISORS LLC,

                    Plaintiff(s),

    -against-

TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,

                    Defendant(s).

-------------------------------------------------------X

Index No.: 653968/2026

**CORRECTED**
**AFFIDAVIT OF SERVICE**

STATE OF INDIANA    )
                  s.s :
COUNTY OF HAMILTON  )

      BAMIDELLE OJO, being duly sworn, deposes and says that he is an agent of KEATING & WALKER ATTORNEY SERVICE, INC. at 116 Nassau Street, Suite 816, New York, New York 10038, is over the age of eighteen years and is not a party to the action.

      That on the 9th day of July, 2026, at approximately 7:21 p.m., deponent served a true copy of the **Summons (endorsed with the index number and date of filing); Complaint (with Exhibit A); Notice of Electronic Filing** upon Justin Collins at 12301 Florida Road, Fortville, Indiana 46040 by personally delivering and leaving the same with Justin Collins at that address. At the time of service deponent asked Justin Collins whether he is in active military service for the United States or for the State in any capacity whatsoever or is dependent upon such a person and received a negative reply.

      Justin Collins appears to be a Caucasian male, approximately 52 years of age, is approximately 5 feet, 6 inches tall, weighs approximately 200 pounds, with brown hair and brown eyes.

Sworn to before me this
16th day of July, 2026

_____
NOTARY PUBLIC, STATE OF INDIANA

_____
BAMIDELLE OJO

CHRISTINE E BREWER
NOTARY PUBLIC
**SEAL**
MARION COUNTY, STATE OF INDIANA
MY COMMISSION EXPIRES AUGUST 26, 2032
COMMISSION NUMBER NP0758423

(1)

Case 1:26-cv-06735-PAE   Document 1-1   Filed 08/06/26   Page 30 of 32

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
-------------------------------------------------------X
FORTRESS CREDIT ADVISORS LLC,

                Plaintiff(s),

    -against-

TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,

                Defendant(s).
-------------------------------------------------------X

Index No.: 653968/2026

**CERTIFICATE OF CONFORMITY**

STATE OF INDIANA     )
                  s.s :
COUNTY OF HAMILTON  )

On this _16th_ day of July, 2026, BAMIDELLE OJO, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument (Corrected Affidavit of Service upon Justin Collins) and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Dated: _July 16, 2026_

_Christine E Brewer_
NOTARY PUBLIC, INDIANA

CHRISTINE E BREWER
NOTARY PUBLIC
**SEAL**
MARION COUNTY, STATE OF INDIANA
MY COMMISSION EXPIRES AUGUST 26, 2032
COMMISSION NUMBER NP0758423

(2)

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
----------------------------------------------------------X

FORTRESS CREDIT ADVISORS LLC,

                              Plaintiff(s),

                                                    Index No.: 653968/2026

     -against-

TWG DEVELOPMENT, LLC,                    **CORRECTED**
LOUIS KNOBLE and JUSTIN COLLINS,         **AFFIDAVIT OF SERVICE**

                              Defendant(s).
----------------------------------------------------------X

STATE OF INDIANA        )
                        s.s :
COUNTY OF HAMILTON      )

PATRICIA MAGNUSON, being duly sworn, deposes and says that she is an agent of KEATING & WALKER ATTORNEY SERVICE, INC. at 116 Nassau Street, Suite 816, New York, New York 10038, is over the age of eighteen years and is not a party to the action.

That on the 9th day of July, 2026, at approximately 7:05 p.m., deponent served a true copy of the **Summons (endorsed with the index number and date of filing); Complaint (with Exhibit A); Notice of Electronic Filing** upon Louis Knoble at 11188 Estancia Way, Carmel, Indiana 46032 by personally delivering and leaving the same with Chloe Lamur, a person of suitable age and discretion employed and residing (as a live-in Au Pair) at that address, the actual place of residence of the defendant. At the time of service deponent asked whether Louis Knoble is in active military service for the United States or for the State in any capacity whatsoever or is dependent upon such a person and received a negative reply.

Chloe Lamur appears to be a Caucasian female, approximately 23 years of age, is approximately 5 feet, 6 inches tall, weighs approximately 135 pounds and has black hair.

That on the 13th day of July, 2026, deponent served another copy of the foregoing by enclosing a copy in a securely sealed and postpaid wrapper with the words "PERSONAL and CONFIDENTIAL" written on the same, and not indicating on the outside that it is from an attorney or concerns a legal matter, and depositing the same into an official depository maintained by the Government of the United States and State of Indiana, addressed as follows:

**Mr. Louis Knoble**
**11188 Estancia Way**
**Carmel, IN 46032**

Sworn to before me this
16____ day of July, 2026

_____            _____
NOTARY PUBLIC, STATE OF INDIANA      PATRICIA MAGNUSON

PAUL H SLOAN, III
Notary Public - Seal
Boone County - State of Indiana
Commission Number NP0672999
My Commission Expires Sep 15, 2031

(1)

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
-------------------------------------------------------X
FORTRESS CREDIT ADVISORS LLC,

                       Plaintiff(s),

      -against-


TWG DEVELOPMENT, LLC,
LOUIS KNOBLE and JUSTIN COLLINS,

                      Defendant(s).
-------------------------------------------------------X

Index No.: 653968/2026

**CERTIFICATE OF CONFORMITY**

STATE OF INDIANA      )
                       s.s :
COUNTY OF HAMILTON   )


On this ⟨16⟩ day of July, 2026, PATRICIA MAGNUSON, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument (Corrected Affidavit of Service upon Louis Knoble) and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.


Dated: 07/16/2026

 

                                       NOTARY PUBLIC, INDIANA

                                PAUL H SLOAN, III
                                Notary Public - Seal
                            Boone County - State of Indiana
                            Commission Number NP0672999
                            My Commission Expires Sep 15, 2031


(2)