**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FORTRESS CREDIT ADVISORS LLC,<br><br>Plaintiff,<br>v.<br><br>TWG DEVELOPMENT, LLC, *et al.*,<br><br>Defendants. | 26 Civ. 6735 (PAE) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. FACTS ....................................................................................................................2

III. LEGAL STANDARD...............................................................................................5

IV. ARGUMENT ..........................................................................................................5

A. The First Cause of Action fails as a matter of law because Plaintiff has not, and cannot, allege facts supporting a claim for a lack of good faith arising out of the LOI. ........................................................................................................6

B. Defendants are not responsible for Fortress's due diligence costs and expenses and, thus, the Second Cause of Action fails as a matter of law. ............................10

C. Plaintiff's Third Cause of Action, alleging a breach of the implied covenant of good faith and fair dealing, fails because it duplicates its earlier claims...............13

D. Defendants should be awarded costs and expenses, including attorneys' fees and court costs, as the prevailing parties. .....................................................15

V. CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................5

*Berner v. Getty Images Holdings, Inc.*,
794 F. Supp.3d 189 (S.D.N.Y. 2025)....................11, 13

*Burton v. Label, LLC*,
344 F. Supp.3d 680 (S.D.N.Y. 2018)....................9, 13, 14

*Cambridge Capital LLC v. Ruby Has LLC*,
675 F. Supp.3d 363 (S.D.N.Y. 2023)....................14

*CapLOC, LLC v. McCord*,
Case No. 17 Civ. 5788 (AT), 2020 WL 1036044 (S.D.N.Y. Mar. 3, 2020)....................14

*Consol. Edison, Inc. v. Northeast Utilities*,
426 F.3d 524 (2d Cir. 2005)....................12

*Gas Natural, Inc. v. Iberdrola, S.A., et al.*,
33 F. Supp.3d 373 (S.D.N.Y. 2014).................... *passim*

*Goodstein Const. Corp. v. City of New York*,
80 N.Y.2d 366 (1992)....................14

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)....................5

*IDT Corp. v. Tyco Group, S.A.R.L.*,
23 N.Y.3d 497 (2014)....................6, 7

*Kauffman v. New York Presbyterian Hospital*,
762 F. Supp.3d 309 (S.D.N.Y. 2025)....................5

*Mill Financial, LLC v. Gillett*,
122 A.D.3d 98 (1st Dept. 2014)....................13, 15

*Network Apps, LLC v. AT&T Mobility LLC*,
778 F. Supp.3d 610 (S.D.N.Y. 2025)....................5, 10

*Novartis Pharma AG v. Incyte Corp.*,
777 F. Supp.3d 340 (S.D.N.Y. 2025)....................9

*Rolon v. Henneman*,
517 F.3d 140 (2d Cir. 2008)....................5

*St. Christopher's, Inc. v. JMF Acquisitions, LLC*,
No. 20-3808-CV, 2021 WL 6122674 (2d Cir. Dec. 28, 2021)....................11, 12, 13

*Watson Laboratories, Inc. v. Forest Laboratories, Inc.*,
101 F. 4th 223 (2d Cir. 2024)....................5

**Rules**

Fed. R. Civ. P.12(b)(6)....................5

Fed. R. Evid. 106....................9

Defendants TWG Development, LLC ("TWG" or the "Company"), Louis Knoble ("Knoble"), and Justin Collins ("Collins", and collectively with Knoble, the "Key Principals", and the Key Principals, collectively with TWG, the "Defendants"), by and through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss each and every cause of action asserted by Plaintiff Fortress Credit Advisors LLC ("Fortress" or "Plaintiff", and collectively with Defendants, the "Parties") in its Complaint including: 1) breach of contract based on alleged failure to negotiate in good faith, 2) breach of contract based on alleged failure to reimburse costs, and 3) breach of New York's implied covenant of good faith and fair dealing. Defendants also seek an Order awarding Defendants their reasonable attorneys' fees and costs as the prevailing parties pursuant to Section 7 of a letter titled "Offer to Invest in TWG Development" dated August 29, 2025 (the "LOI"),[1] and such other and further relief as the Court deems just and proper.

## I. INTRODUCTION

Plaintiff got what it bargained for in the LOI, denied Defendants their contractual rights, and then filed a Complaint that fails to state a claim. Defendants vigorously dispute many of the allegations in the Complaint but need not address these factual disagreements at this juncture because, even accepting Plaintiff's allegations as true, the allegations and claims asserted therefrom fail as a matter of law. The LOI was expressly non-binding with respect to the potential transaction contemplated therein. When the Parties' negotiations reached an impasse on that potential transaction, Plaintiff, unsatisfied with that outcome, actively prevented Defendants from

---

[1] For purposes of this Motion only, Defendants adopt Plaintiff's characterization of Exhibit A to the Complaint and refer to it herein as the "Letter of Intent" or "LOI" but note Exhibit A to the Complaint is a letter from Fortress to TWG with the subject "Offer to Invest in TWG Development" and refers to its nonbinding attachment as "Proposed Terms".

exercising their contractual rights under the LOI and now makes claims unsupported and contradicted by the plain language of the LOI. Defendants have fully performed their obligations pursuant to the LOI and should be awarded their reasonable attorneys' fees and costs incurred in responding to and seeking dismissal of the Complaint.

## II. FACTS

This lawsuit arises out of the Letter of Intent, pursuant to which Plaintiff contemplated making an investment in the Company and engage in related transactions with entities owned and controlled by the Key Principals (the "<u>Proposed Investment</u>" or "<u>Transaction</u>"). *See* Compl. at ¶¶ 1, 16; LOI. In particular, pursuant to the LOI dated August 29, 2025, which amended and restated an earlier and similarly nonbinding term sheet dated May 21, 2025, the Parties outlined explicitly nonbinding "<u>Proposed Terms</u>" for the "possibility of" Fortress making an investment in the Company. *Id.* at ¶ 15; LOI at § 1.

The LOI was explicitly and unequivocally non-binding with respect to the Proposed Investment. LOI at §§ 1–2. In particular, Section 1 of the LOI states that Exhibit A to the LOI "*<u>outlines</u>* certain of the *<u>proposed material terms</u>* and conditions regarding the *<u>proposed investment</u>* by Fortress in the Company and related transactions among Fortress and Justin Collins and Louis Knoble, the controlling principals of the Company." LOI at § 1 (italics and underline added for emphasis). Section 2 of the LOI is even more explicit regarding the non-binding nature of the Term Sheet and the Proposed Terms:

> 2. This Term Sheet is *<u>for discussion purposes</u>*, is intended as an *<u>outline only of the basic terms upon which Fortress [sic] willing to consider</u>* entering into the Transaction, does not address all matters upon which agreement must be reached in order for the Transaction to be consummated, and *<u>is not intended to be, and shall not be, a commitment by either Party to enter into the Transaction</u>*. With the exception of this <u>Section 2</u> through <u>Section 10</u> (inclusive) of this letter (collectively, the "**Binding Obligations**"), which shall be binding on the Parties under all circumstances, this Term Sheet shall not be a binding commitment

> between the Parties to enter into the Transaction. *A binding commitment between the Parties regarding the Transaction will exist among the Parties only if and to the extent set forth in definitive, binding documentation regarding the Transaction executed and delivered by the Parties*.

LOI at § 2 (bold in original; italics and underline added for emphasis).

The LOI did, however, include certain other "Binding Obligations", but not with respect to underlying business terms of the Proposed Investment itself. *Id.*; *see also* Compl. at ¶¶ 15, 17. The LOI provided Fortress with an exclusive "Due Diligence Period" between August 29, 2025, and June 30, 2026, during which the Parties agreed that they would work towards negotiating and finalizing the terms and documentation of a final binding transaction. *See* Compl. at ¶ 18; LOI at §§ 1–3. Also included in the Binding Obligation was a right by Fortress to obtain, in certain limited circumstances, reimbursement of certain of its actual out-of-pocket costs and expenses. Compl. at ¶¶ 19–20; LOI at § 4. Specifically, Section 4 of the LOI provided, in part:

> [I]f all of the "Phase I Consents" (as noted in the Proposed Terms) are not received by the Parties prior to the expiration of the Due Diligence Period, then the Company and the Key Principals shall, on a joint and several basis, reimburse Fortress on demand for all out-of-pocket costs and expenses incurred by or on behalf of Fortress and its Affiliates in connection with pursuing the Transaction, including, without limitation, in drafting and negotiating the forms of Definitive Documentation.

LOI at § 4(b). By the express terms of the LOI, any obligation to reimburse Fortress for its out-of-pocket costs and expenses was entirely independent of whether a Transaction actually closed, but rather was dependent on whether the requisite consents were obtained within the Due Diligence Period. *Id.*

After executing the LOI, Plaintiff alleges that the Parties proceeded to negotiate through the middle of February 2026. Compl. at ¶ 24. During this approximately 6-month period, Fortress also alleges that TWG obtained a loan without Fortress's consent that reduced Fortress's leverage to skew the Transaction in its favor. *See id.* at ¶ 26. Notably, Fortress does not and cannot allege that TWG's refinancing of its debt breached the LOI. *See generally id.*; LOI at § 3. Defendants

continued to negotiate the terms of a potential Transaction despite the Parties having failed to bridge the gaps on numerous material and outstanding provisions. *See id.* at ¶¶ 29–30; LOI at §§ 1–2. Ultimately, the Parties reached an impasse and the Transaction never closed. Compl. at ¶¶ 32, 38. The precise reasons why the Parties were unable to reach agreement on final terms for the Proposed Investment, while contested, are immaterial to this motion to dismiss.

The Parties' inability to reach agreement on final terms for the hypothetical Transaction neither modifies the LOI nor the Parties' rights and obligations thereunder. LOI at § 2. Defendants never repudiated the Transaction because the non-binding Proposed Investment never came to fruition, and Defendants fully performed the nine Binding Obligations of the LOI. Even though Defendants believed that the Parties would not be able to reach agreement on final binding terms for a Proposed Investment, Defendants continued to attempt to obtain the Phase I Consents during the Due Diligence Period, *see* Compl. at ¶¶ 33, 35–36, as was their contractual right. Accordingly, Defendants requested that Fortress provide them with information and documents necessary to obtain the Phase I Consents in accordance with Section 4(b) of the LOI. *Id.* at ¶ 35. In its Complaint, Fortress concedes that it refused to provide necessary information and documents requested by Defendants to obtain the Phase I Consents within the relevant period in an effort to frustrate and prevent Defendants from obtaining the benefit of the bargain under the terms of the LOI. *Id.* at ¶ 36. Just days after the Due Diligence Period expired, Fortress commenced these proceedings asserting that Defendants failed to obtain the Phase I Consents in accordance with Section 4(b) of the LOI. *Id.* at ¶ 38.[2]

[2] Plaintiff alleges that it sent Defendants a formal demand letter seeking the reimbursement of its out-of-pocket costs and expenses on May 19, 2026. Compl. at ¶ 37. Defendants have no record of receiving any such communication.

## III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Kauffman v. New York Presbyterian Hospital*, 762 F. Supp.3d 309, 315 (S.D.N.Y. 2025) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At minimum, the allegations must 'raise a right to relief above the speculative level.'" *Watson Laboratories, Inc. v. Forest Laboratories, Inc.*, 101 F.4th 223, 235 (2d Cir. 2024) (quoting *Twombly*, 550 U.S. at 555). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Network Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp.3d 610, 618 (S.D.N.Y. 2025) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). Courts are "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

## IV. ARGUMENT

The Complaint should be dismissed in its entirety because Fortress has failed to state a claim upon which relief may be granted. The parties entered into the LOI, which was a non-binding agreement to potentially agree with respect to the Proposed Investment. Ultimately, the Parties did not reach agreement on the terms of a final binding Transaction. At the same time, Fortress concedes that it deliberately prevented Defendants from obtaining Phase 1 Consents during the Due Diligence Period by failing to provide requested documents and information to Defendants.

The first cause of action for breach of contract based on alleged failure to negotiate in good faith is contradicted by the plain language of Fortress's LOI and rests entirely on the explicitly nonbinding Proposed Terms masquerading as irreputable agreed terms. The second cause of action for breach of contract based on an alleged failure to reimburse costs fails because Fortress

acknowledges and concedes it frustrated and prevented Defendants from obtaining the consents that would have eliminated any right to reimbursement. The third cause of action for breach of New York's implied covenant of good faith and fair dealing disingenuously blames Defendants for Fortress's own misconduct and is duplicative of the first two causes of action. In addition to dismissing Fortress's Complaint in its entirety, the Court should also award Defendants their reasonable attorneys' fees as the prevailing parties pursuant to Section 7 of the LOI.

**A. The First Cause of Action fails as a matter of law because Plaintiff has not, and cannot, allege facts supporting a claim for a lack of good faith arising out of the LOI.**

Fortress's first cause of action for breach of contract against the Defendants for their alleged failure to negotiate in good faith fails as a matter of law. The Parties' inability to agree on final terms for a non-binding hypothetical Potential Investment does not evidence bad faith. Nor does the Complaint allege specific instances or acts of bad faith other than the parties being unable to reach agreement on the terms of a non-binding hypothetical transaction. *See IDT Corp. v. Tyco Group, S.A.R.L.*, 23 N.Y.3d 497, 503 (2014) ("There is such a thing as a good faith impasse; not every good faith negotiation bears fruit."). Here, Defendants negotiated in good faith and the Proposed Investment faltered over genuine disagreements over expressly non-binding proposed terms.

In the Second Circuit, there are three key indicia of negotiating in good faith. *See Gas Natural, Inc. v. Iberdrola, S.A., et al.*, 33 F. Supp.3d 373, 382–83 (S.D.N.Y. 2014) (citation omitted). First, "at the very least, good faith requires honesty in fact." *Id.* at 382 (citation omitted). Second, "[a]cting in one's financial self-interest, for example, in response to market changes, does not constitute bad faith." *Id.* at 383 (citation omitted). Third, "bad faith requires some 'deliberate misconduct' – arbitrary or capricious action taken out of spite or ill will or to back out of an otherwise binding contractual commitment." *Id.* at 383 (citation omitted). Here, just like in *Gas*

*Natural*, "shorn of its conclusory assertions, the Complaint simply fails to allege facts sufficient to state a plausible claim that Defendants acted in bad faith during their negotiations with Plaintiff." *Id.* at 383–84 (citation omitted and cleaned up).

At the motion-to-dismiss stage, the Complaint must allege the specific instances or acts of bad faith based on binding provisions. *See Gas Natural*, 33 F. Supp.3d at 384. In *Gas Natural*, a prospective purchaser sued a seller for selling to a third-party during negotiations governed by a letter of intent. *See id.* Critically, the letter of intent did not contain an exclusivity clause, so despite the prospective purchaser requesting exclusivity and indicating that it expected exclusivity, imposing an exclusivity requirement would trap the seller "in surprise contractual obligations that they never intended to undertake." *Id.* (citation omitted). Ultimately, the court in *Gas Natural* found the contours of good faith must be strictly derived from the binding terms of the letter of intent and noted that "a sophisticated entity involved in a multimillion dollar acquisition" can protect its interests by more carefully negotiating the terms of the letter of intent. *Id.* at 385. Likewise, in *IDT*, the court held that a plaintiff's claim of a breach to negotiate future agreements in good faith failed in circumstances similar to here, where the plaintiff made conclusory allegations of conflicting terms and complained that the counter-party made a definitive communication of the end of a potential transaction. *IDT*, 23 N.Y.3d at 503-04.

Fortress cannot accuse Defendants of deliberate misconduct in failing to reach agreement on final binding terms because Defendants acted in good faith based on the Binding Obligations in the LOI. *See Gas Natural* at 383 (citation omitted). Most importantly, what the Complaint misrepresents as "the agreed terms" and "multiple provisions of the executed Term Sheet that were fundamental to the parties' bargain," are characterized completely differently in the LOI as explicitly nonbinding Proposed Terms:

> This Term Sheet is *for discussion purposes*, is intended as an *outline only of the basic terms upon which Fortress [sic] willing to consider* entering into the Transaction, does not address all matters upon which agreement must be reached in order for the Transaction to be consummated, and *is not intended to be, and shall not be, a commitment by either Party to enter into the Transaction*. With the exception of this Section 2 through Section 10 (inclusive) of this letter (collectively, the "**Binding Obligations**"), which shall be binding on the Parties under all circumstances, *this Term Sheet shall not be a binding commitment between the Parties to enter into the Transaction. A binding commitment between the Parties regarding the Transaction will exist among the Parties only if and to the extent set forth in definitive, binding documentation regarding the Transaction executed and delivered by the Parties*.

*Compare* Compl. at ¶¶ 45–46 (Plaintiff alleges that Parties did not reach agreement on terms) *with* LOI at § 2 (bold in original; italics and underline added for emphasis).

The LOI specifically states that the attached Proposed Terms, defined and identified in Paragraph 1 of the LOI, were explicitly nonbinding and were for discussion purposes. LOI at §§ 1–2. Section 2 goes even further to state that the LOI's only Binding Obligations were included in Sections 2 through 10, expressly excluding Section 1 that included the "Proposed Terms". LOI at § 2. In other words, the Proposed Investment outlined in the LOI and its Proposed Terms was never more than hypothetical. Fortress attempts the same sleight of hand with the Proposed Terms as the unsuccessful plaintiff in *Gas Natural* did with exclusivity by seeking to enforce non-existent terms to trap Defendants "in surprise contractual obligations that they never intended to undertake." *See Gas Natural*, 33 F. Supp.3d at 384. As a matter of law, Defendants did not owe any binding contractual commitment to agree to any of the Proposed Terms, so Defendants' alleged efforts to negotiate the modification or elimination of certain Proposed Terms cannot constitute bad faith. *See* Compl. at ¶¶ 45–47; *see also Gas Natural*, 33 F. Supp.3d at 383–85.

Fortress also cannot accuse Defendants of bad faith for acting in their own self-interest and being honest. *See Gas Natural*, 33 F. Supp.3d at 383 (citation omitted). Fortress alleges that, after over three months of negotiations under the LOI, Defendants refinanced certain debts and

became less engaged in commenting on potential deal documents. Compl. at ¶¶ 26–27, 44. In other words, as alleged by Plaintiff, Defendants allegedly benefitted from market changes during the diligence period and became more discerning about the terms upon which the Proposed Investment was acceptable. *See Gas Natural*, 33 F. Supp.3d at 383 ("[a]cting in one's financial self-interest, for example, in response to market changes, does not constitute bad faith") (citation omitted). This is not bad faith.

Similarly, despite Fortress's disappointment, Mr. Knoble was acting in good faith when he honestly wrote an email that included words to the effect that the Transaction "will not come to fruition", thereby allowing Fortress to stop spending material sums ostensibly on due diligence. Compl. at ¶¶ 32,[3] 42, 48; *see also Gas Natural*, 33 F. Supp.3d at 382 ("Each party must provide an honest articulation of interests, positions, or understandings.") (internal quotations, modifiers, and citation omitted). Indeed, Mr. Knoble was under no obligation to accept any terms for a proposed Transaction under the express terms of the LOI, so he cannot have acted in bad faith in ultimately determining not to move forward with the Transaction. *See Burton v. Label, LLC*, 344

[3] In this paragraph of the Complaint, Plaintiff selectively and misleadingly quotes from an email written by Mr. Knoble. Mr. Knoble's complete statement was: "it is apparent that the deal will not come to fruition because the parties have not been able to reach agreement on a number of outstanding material terms. TWG has acted in good faith at all times, but given the extensive negotiations over the extended period of time, which is reflected in the expenses incurred by both sides in pursuing the transaction, we do not believe that the parties will be able to reach a final definitive agreement acceptable to all." Defendants are entitled to introduce this full writing in support of its Motion to Dismiss because it is integral to this allegation of the Complaint. *See Novartis Pharma AG v. Incyte Corp.*, 777 F. Supp.3d 340, 347 (S.D.N.Y. 2025) ("The complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (citation and internal quotation marks omitted); *see also* Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part – or any other statement – that in fairness ought to be considered at the same time."). A true and accurate copy of Mr. Knoble's correspondence on March 16, 2026, referenced in paragraph 32 of the Complaint is attached hereto as **Exhibit 1**.

F. Supp.3d 680, 697 (S.D.N.Y. 2018) ("[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract.") (citation omitted).

Notably, after Mr. Knoble's "honest articulation of interests, positions, or understandings", *see Gas Natural*, 33 F. Supp.3d at 382 (citation and internal modifier omitted), Defendants continued to honor the Binding Obligations, including Fortress's exclusivity during the Due Diligence Period. Fortress does not plead any specific facts alleging that Defendants failed to honor Fortress's exclusivity so its sole, unsupported and conclusory statement to the contrary must be disregarded. *Compare* Compl. at ¶ 43 ("Defendants breached Section 4(a) of the LOI by failing to negotiate exclusively and in good faith with Fortress during the due diligence period.") *with Network Apps, LLC*, 778 F. Supp.3d 610 at 618 (courts are "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions").

In sum, the first cause of action should be dismissed with prejudice because the Complaint fails to state a claim for breach of contract based on alleged failure to negotiate exclusively and in good faith. Defendants fully performed under the LOI by fulfilling the Binding Obligations in good faith. Plaintiff has alleged no facts that establish liability arising from Defendants' ultimate determination to not move forward with the Proposed Investment, regardless of the reason. As the court noted in *Gas Natural*, parties must protect themselves by carefully negotiating the language in letters of intent because they cannot retroactively trap co-parties "in surprise contractual obligations that they never intended to undertake." *Gas Natural*, 33 F. Supp.3d 373, 384–85.

**B. Defendants are not responsible for Fortress's due diligence costs and expenses and, thus, the Second Cause of Action fails as a matter of law.**

Fortress's second cause of action for breach of contract as a result of Defendants' alleged failure to reimburse costs is entirely based on false premises that are contradicted and undermined by the LOI and Fortress's own allegations. *See* Compl. at ¶¶ 35–36, 55–58; LOI. To summarize

briefly, 1) the nonbinding, hypothetical Proposed Investment never progressed to a point where it could be "repudiated"; 2) the nonbinding Proposed Terms of the LOI were never "agreed terms" or a "negotiated deal structure", as explained, *supra*; and 3) the LOI's Binding Obligations are entirely independent of whether the Parties ultimately agreed to the terms of a comprehensive binding Transaction. *Compare* Compl. at ¶ 55 *with* LOI at §§ 1–4, 9. Shorn of these false conclusory allegations and legal conclusions masquerading as factual conclusions, Fortress's position appears to be that it can "rely on the failure of [Defendants] to perform a condition precedent where [Fortress] has frustrated or prevented the occurrence of the condition." *See Berner v. Getty Images Holdings, Inc.*, 794 F. Supp.3d 189, 200 (S.D.N.Y. 2025). New York law disagrees. *Id.* at 200–201 (excusing performance where a contracting counterparty prevented completion of a condition precedent).

In particular, "[t]he prevention doctrine excuses the non-occurrence of a condition precedent if the party seeking to invoke that condition 'was instrumental in preventing or frustrating its occurrence.'" *St. Christopher's, Inc. v. JMF Acquisitions, LLC*, No. 20-3808-CV, 2021 WL 6122674, *4 (2d Cir. Dec. 28, 2021) (citation omitted). In *JMF Acquisitions*, St. Christopher's sought to terminate a contract based on JMF's failure to obtain necessary government approvals by a specified date, but JMF successfully invoked the prevention doctrine at the motion-to-dismiss stage by alleging "St. Christopher's materially hindered JMF's ability to obtain the requisite government approvals in a timely manner." *Id.* (citation omitted). "If one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused." *Id.* (quoting 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 39.3 (4th ed. 2000 & 2009 Supp.)). Accordingly, the prevention doctrine supports

that "St. Christopher's was precluded from terminating the contract on the basis that JMF failed to obtain the requisite government approvals." *Id.*

The Court should reach the same conclusion here. Defendants' inability to obtain the Phase I Consents required by Section 4(b) of the LOI must be excused because, as expressly alleged in the Complaint, "Fortress declined to participate in that exercise", *see* Compl. at ¶¶ 33, 35–38, and was thereby "instrumental in preventing or frustrating its occurrence." *JMF Acquisitions, LLC*, 2021 WL 6122674 at *4. Section 2 of the LOI establishes that the LOI and the attached Proposed Terms are "not intended to be, and shall not be, a commitment by either Party to enter into the Transaction." LOI at § 2. Yet, Fortress misconstrues Defendants' decision to not enter the Transaction as an excuse to prevent Defendants from obtaining the Phase I Consents, which was a separate and distinct contractual term. Compl. at ¶ 36; LOI at § 4(b). If Fortress, a sophisticated entity involved in a potential multimillion dollar investment, believed that its out-of-pocket costs and expenses would automatically be reimbursed if the Proposed Investment did not come to fruition, for whatever reason, then the language employed in the LOI would have explicitly said so. *See Gas Natural*, 33 F. Supp.3d 373, 385 (explaining sophisticated parties are only entitled to the protections that are negotiated); *Consol. Edison, Inc. v. Northeast Utilities*, 426 F.3d 524, 527 ("Where the contract is clear and unambiguous on its face, courts must determine the intent of the parties from within the four corners of the instrument."). The LOI does not, and Fortress cannot now read into the LOI terms and rights that do not exist. Regardless of the fate of the hypothetical Proposed Investment, the Parties were obligated to honor the LOI's Binding Obligations, but Fortress refused and prevented Defendants from obtaining the Phase I Consents, Compl. at ¶¶ 33, 35–38; LOI at §§ 1–4 and 9, thus defeating the Second Cause of Action.

In sum, the second cause of action should be dismissed with prejudice because the Complaint fails to state a claim for breach of contract based on alleged failure to reimburse costs. "Similar to the implied covenant of good faith and fair dealing, the prevention doctrine rests on an implied obligation under a contract not to frustrate or prevent the performance of a condition precedent." *Berner*, 794 F. Supp.3d at 200 (citation and internal modifiers omitted). Fortress openly admits it prevented Defendants from obtaining the Phase I Consents so under New York law Defendants' inability to obtain the Phase I Consents must be excused. *See* Compl. at ¶ 36; *JMF Acquisitions, LLC*, 2021 WL 6122674 at *4. Fortress's second cause of action fails as a matter of law.

### C. Plaintiff's Third Cause of Action, alleging a breach of the implied covenant of good faith and fair dealing, fails because it duplicates its earlier claims.

Fortress's third cause of action is duplicative of its first two and misapplies New York's implied duty of good faith and fair dealing. "Where a good faith claim arises from the same facts and seeks the same damages as a breach of contract claim, it should be dismissed." *Mill Financial, LLC v. Gillett*, 122 A.D.3d 98, 104–05 (1st Dept. 2014) ("The conduct alleged in the two causes of action need not be identical in every respect. It is enough that they arise from the same operative facts[.]" *Id.* at 99 (citation omitted)). For a plaintiff to adequately allege a cause of action for breach of the covenant of good faith and fair dealing that is not duplicative of its breach of contract claim, it "must allege that Defendants 'fulfilled their contractual obligations' but that those obligations were carried out 'in bad faith in order to deprive Plaintiffs of the benefit of their bargain.'" *Burton v. Label, LLC*, 344 F. Supp.3d 680, 697 (S.D.N.Y. 2018) (citation omitted). "In other words, Plaintiffs must allege that Defendants, in bad faith, engaged in acts that had the effect of destroying or injuring Plaintiffs' right to receive the fruits of the contract." *Id.* (citation and internal quotation

marks omitted). "[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract." *Id.* (citation omitted).

In *Burton*, apart from the factual allegations supporting their breach of contract claim, plaintiffs alleged that a contractual counterparty failed to defend plaintiffs against a third-party's accusations of wrongdoing, but the allegations had "nothing to do with Plaintiffs receiving the benefits promised under their contract." *Id.* (citation omitted). The court found that plaintiffs' allegations were "outside the scope of the contract, and may not form the basis of either a breach-of-contract claim *or* a claim for breach of the implied covenant of good faith and fair dealing." *Id.* (citation and internal quotation marks omitted) (emphasis in original).

Here, Fortress alleges the same facts to support its claim for the breach of the implied covenant of good faith and fair dealing as it asserts in support of its contract claims. Fortress attempts to manifest an obligation under the LOI for the Defendants to enter a comprehensive binding Transaction or reimburse Plaintiff's due diligence costs, but, as explained above, there is no such binding obligation to do so. *Compare* Compl. at ¶ 63 *with* LOI.[4] The Parties bargained that the "Term Sheet shall not be a binding commitment between the Parties to enter into the Transaction." LOI at § 2. The Parties bargained for specific, explicit conditions precedent that

---

[4] Fortress also purports to seek as damages "benefit-of-the-bargain damages", Compl. at ¶ 64, in connection with its Third Cause of Action without expressly articulating what Fortress believes those damages would include. New York Courts, however, have routinely held that "benefit-of-the-bargain damages" are not recoverable in this context. *See e.g.*, *Cambridge Capital LLC v. Ruby Has LLC*, 675 F. Supp.3d 363, 414 (S.D.N.Y. 2023) ("New York law expressly limits a plaintiff to reliance damages for breach of an agreement to negotiate in good faith."); *Goodstein Const. Corp. v. City of New York*, 80 N.Y.2d 366, 373 (1992) ("a party's alleged failure to bargain in good faith is not a but-for cause of [plaintiff's] lost profits, since even with the best faith on both sides the deal might not have been closed [and] attributing [plaintiff's] lost profits to [defendant's] bad faith may be speculative at best") (citation and internal quotation marks omitted); *CapLOC, LLC v. McCord*, Case No. 17 Civ. 5788 (AT), 2020 WL 1036044, *20 (S.D.N.Y. Mar. 3, 2020) (same).

must be met for Fortress to be reimbursed for out-of-pocket costs and expenses. *Id.* at § 4. Fortress's allegations that Defendants breached New York's implied covenant of good faith and fair dealing by exercising Defendants' unambiguous rights to decide not to enter into a final binding transaction, and to obtain the Phase I Consents during the Due Diligence Period, are entirely duplicative of the factual predicate for its breach of contract claims. *See* Compl. at ¶¶ 42, 45, 46, 55–57, 63.

As such, the third cause of action should be dismissed with prejudice because the Complaint fails to state a claim for breach of New York's implied covenant of good faith and fair dealing. Fortress's claim for breach of the implied covenant of good faith and fair dealing is based on the same facts and seeks the same damages as Fortress's claims for breach of contract and is therefore duplicative and must be dismissed under New York law. *See Mill Financial*, 122 A.D. at 104. Fortress's third cause of action fails as a matter of law.

**D. Defendants should be awarded costs and expenses, including attorneys' fees and court costs, as the prevailing parties.**

Section 7 of the LOI, one of the Binding Obligations, provides that "the prevailing party shall be entitled to recover, in addition to damages or other relief, reasonable out of pocket costs and expenses, reasonable out of pocket attorneys' fees and court costs[.]" LOI at § 7; *see also id.* at § 2. Per Section 7 of the LOI, "the term 'prevailing party' shall mean the party which obtains the principal relief it has sought, whether by compromise settlement or judgment." *Id*. at § 7. When granting this Motion, Defendants request the Court enter an order and judgment deeming Defendants the "prevailing party" and awarding Defendants' out of pocket costs and expenses, including court fees and attorney's fees. Upon the Court's request, Defendants will submit a statement of out-of-pocket costs, expenses, and attorneys' fees it seeks to recover under any such award.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice, and enter judgment in favor of Defendants for their out-of-pocket costs, expenses, and attorneys' fees in responding to and seeking dismissal of the Complaint.

Dated: September 4, 2026

Respectfully submitted,

By: *<u>/s/ Jessa DeGroote</u>*

Alyson M. Fiedler, Esq.
Jessa DeGroote, Esq.
**ICE MILLER LLP**
1500 Broadway, Suite 2900
New York, NY 10036
(212) 824-4940
Alyson.Fiedler@icemiller.com
Jessa.DeGroote@icemiller.com

Aaron Casagrande, Esq. (admitted *pro hac vice*)
**ICE MILLER LLP**
100 Light Street, Suite 2700
Baltimore, MD 21202
(410) 951-5876
Aaron.Casagrande@icemiller.com

Ryland A. Doerr, Esq. (admitted *pro hac vice*)
**ICE MILLER LLP**
250 West Street, Suite 700
Columbus, OH 43215
(614) 462-1021
Ryland.Doerr@icemiller.com

*Attorneys for Defendants TWG Development, LLC, Louis Knoble, and Justin Collins*

**CERTIFICATE OF COMPLIANCE**

The foregoing Motion to Dismiss contains 5,900 words, excluding the portions exempted by Local Civil Rule 7.1(c). This Motion thus complies with the word-count limitations under Local Rule 7.1 because the word count does not exceed 8,750 words permitted under the Rule.

*/s/ Jessa DeGroote*
Jessa DeGroote